UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHERIE EASTERLING, : | |
|     Plaintiff, : | |
| : | CIVIL ACTION NO. |
| v. : | 3:08-cv-0826 (JCH) |
| : | |
| STATE OF CONNECTICUT, : | |
| DEPARTMENT OF CORRECTION, : | |
|     Defendant, : | FEBRUARY 9, 2009 |

**RULING RE: DEFENDANT'S MOTION TO DISMISS [Doc. No. 20] AND
PLAINTIFF'S MOTION AMEND/CORRECT [Doc. No. 33]**

**I.   INTRODUCTION**

Plaintiff, Cherie Easterling, brings this action against defendant, State of Connecticut Department of Correction (the "DOC").[1] Easterling is a resident of Bloomfield, Connecticut, who in 2004 applied for employment with the DOC as a Correction Officer ("CO"). The DOC is an agency of the State of Connecticut. It manages eighteen correctional facilities located throughout the State.

Easterling asserts that the DOC violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), et seq. ("Title VII"), by using an employment practice – a discriminatory physical fitness test – that caused a disparate impact on the basis of sex, and that was neither job-related nor consistent with business necessity. The DOC contends that Easterling has sued the wrong defendant. It maintains that the Connecticut Department of Administrative Services (the "DAS"), the agency responsible

---

[1] Easterling brings this suit as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of herself and others she purports to represent. See Complaint at ¶¶ 14-20. The court has not yet considered Easterling's class action allegations. Therefore, for the purposes of the instant Motions, the court will consider only Easterling's individual claims.

1

for the creation and administration of the physical fitness test in question, is the proper defendant in this case.

The DOC has moved to dismiss Easterling's' Complaint for lack of standing pursuant to Fed. R. Civ. P. 12(b)(6)[2], and for failure to join an indispensable party under Rule 19 pursuant to Fed. R. Civ. P. 12(b)(7). Easterling opposes the DOC's Motion, and has also moved for leave to amend/correct her initial Complaint. For the reasons that follow, both the DOC's Motion to Dismiss [Doc. No. 20] and Easterling's Motion to Amend/Correct [Doc. No. 33] are **DENIED**.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss, the court accepts the allegations of the Complaint as true and construes them in a manner favorable to the pleader. Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). The court must draw all reasonable inferences in the plaintiff's favor. See, e.g., Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003) (discussing Rule 12(b)(1) motion to dismiss).

---

[2] While the DOC characterizes its Motion to Dismiss for lack of standing as a motion pursuant to Fed. R. Civ. P. 12(b)(6) (failure to state a claim upon which relief can be granted), it also asks the court to consider affidavits and other documents outside the Complaint in adjudicating that Motion (e.g., the affidavits of Nicole Anker and Dan Callahan attached to its Memorandum in Support). If the court were to analyze the DOC's standing argument as a motion pursuant to Rule 12(b)(6), however, the court could not consider these documents. See Field Day, LLC v. County of Suffolk, 463 F.3d 167, 192 (2d Cir. 2006) (noting that, "[i]n considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint"). Consequently, the court construes the DOC's standing argument as a Motion to Dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The Second Circuit has expressed preference for this approach. See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89 (2d Cir. 2006) ("Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), the proper procedural route is a motion under Rule 12(b)(1). The distinction is important . . .") (internal citations omitted).

A case is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In assessing a motion to dismiss for lack of subject matter jurisdiction, the court "accept[s] as true all material factual allegations in the complaint." Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer, 416 U.S. at 236). The court, however, refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." Id. (citing Norton v. Larney, 266 U.S. 511, 515 (1925)). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the complaint. Makarova, 201 F.3d at 113; see also Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996); In re Joint E. & So. Dist. Asbestos Litig., 14 F.3d 726, 730 (2d Cir. 1993). Courts evaluating Rule 12(b)(1) motions "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

### III. BACKGROUND

#### A. Summary of Facts

In order to obtain a Correction Officer position with the Department of Correction, a candidate must pass a written exam, a physical fitness test, a criminal background investigation, and an interview. See Complaint [Doc. No. 1] at ¶ 3. The physical fitness test consists of four parts, and failing any one part causes a candidate to fail the entire test. See id. at ¶ 21. The physical fitness test was developed by the Department of

Administrative Services with input from the DOC.[3]  See Affidavit of Dan Callahan ("Callahan Affidavit") at ¶ 4.

Prior to 2007, the physical fitness test included: 1) a sit and reach test; 2) a one-minute sit-up test; 3) a one-minute push-up test; and 4) a timed 1.5-mile run.  See id. The minimum standards for candidates were arranged by gender and age.  See id. at ¶ 22.  For example, a female candidate in the 21-29 age group was required to complete the 1.5-mile run in 14 minutes, 49 seconds; while a female candidate in the 50+ age group was required to complete the 1.5-mile run in 17 minutes, 14 seconds.  See id. The corresponding standards for male candidates were 12 minutes, 25 seconds for the 21-29 age group, and 14 minutes, 50 seconds for the 50+ age group.  See id.

Since 1998, the DOC has administered the physical fitness test with the 1.5-mile run a total of nine times.  See id. at ¶ 23.  In each of the nine tests, female candidates have failed the physical fitness test at a rate that is materially higher than their male counterparts.  See id.  The observed, gender-based disparities are statistically significant at greater than two standard deviations.  See id.

There is no empirical data demonstrating that the physical fitness test is predictive of, or significantly correlated with, important elements of CO job performance. See id. at ¶ 24.  The individual fitness activities that comprise the physical fitness test have not been proven to be an underlying factor for performing essential or critical

---

[3]Under Connecticut law, the Commissioner of Administrative Services, or his authorized agent, is statutorily responsible for administering the selection programs that identify qualified candidates for appointment to, or promotion in, state agencies. See Conn. Gen. Stat. § 5-200a, et seq.  This includes, inter alia, the creation and administration of written and oral tests as well as tests of skill or physical ability. See Conn. Gen. Stat. § 5-219.  Easterling does not dispute that the DAS, with input from the DOC, developed and administered the physical fitness test at issue in this suit.

physical functions of the job of CO.  See id.  The physical fitness test has not been shown to be predictive of who can and cannot perform the essential or critical physical functions of the job of CO.  See id. at ¶ 25.  The physical fitness test has not been scientifically validated as it neither has construct validity nor criterion validity, and it has not been shown to be an accurate and reliable measure of the fitness areas tested.  See id. at ¶ 26.

In 2004, Cherie Easterling applied for employment as a Correction Officer with the DOC.  See Complaint [Doc. No. 1] at ¶ 27.  She took and passed the written exam.  See id. at ¶ 28.  In October 2004, Easterling took the physical fitness test.  See id. at ¶ 29.  She was notified of her failure of the physical fitness test on or about October 28, 2004.  See id.  Easterling had failed the 1.5-mile run portion of the test.  See Affidavit of Nicole Anker ("Anker Affidavit") at ¶ 5.

In 2007, the DOC modified the physical fitness component of its selection process.  See id. at ¶ 5.  Instead of a timed 1.5-mile run, the DOC substituted a 300-meter run test.  See id.  The new 300-meter run test does not create an adverse impact on female applicants for the CO position.  See id.

B.   Procedural History

On April 22, 2005, Easterling, on behalf of herself and similarly situated individuals, filed administrative charges of discrimination on the basis of sex with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and with the Equal Employment Opportunity Commission ("EEOC"), against the DOC.  See id. at ¶ 8. Easterling pursued her complaint at the CHRO and participated in a mediation and fact-finding with the DOC.  See Affidavit of Gary Phelan ("Phelan Affidavit") at ¶ 7.  In

5

addition to counsel from the Connecticut Attorney General's Office and representatives of the DOC, representatives from the DAS were present at this proceeding.  See id.

On June 19, 2007, Easterling's counsel participated in a settlement conference in this matter.  See Affidavit of Stephanie Marnin ("Marnin Affidavit") at ¶ 6.  In addition to counsel for the DOC, a representative of the DAS was present at this settlement conference.  See id.

On February 1, 2008, the CHRO issued a Release of Jurisdiction.  See Complaint at ¶ 9.  On February 4, 2008, the EEOC forwarded Easterling's request for a Notice of Right to Sue to the United States Department of Justice (the "DOJ").  See id. at ¶ 10.  On March 4, 2008, the DOJ Civil Rights Division issued a Notice of Right to Sue.  See id.  Easterling initiated the present action in the District of Connecticut on May 30, 2008, naming the DOC as the sole defendant.

## IV.     ANALYSIS

### A.     DOC's Rule 12(b)(1) Motion

The DOC first contends that Easterling's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing.  Specifically, the DOC argues that Easterling lacks standing because, "to the extent she has suffered any injury, it is not traceable to the actions of the [DOC] and the DOC cannot provide her with any redress for her claims."  DOC's Memo. in Supp. of Motion to Dismiss at 6.

Under Article III of the Constitution, federal courts have jurisdiction only over "cases" and "controversies."  U.S. Const. art. III, § 2.  Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  The "irreducible constitutional

minimum of standing" contains the following three elements:

> First the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is a) concrete and particularized, and b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. at 560-61 (internal citations, quotation marks, and alterations omitted). Consequently, where a plaintiff does not satisfy the three elements of standing, the court lacks subject matter jurisdiction over the suit.

For the purposes of the DOC's Rule 12(b)(1) Motion, only the second and third elements of standing are at issue. Concerning the second element, the DOC argues that Easterling's injury is not fairly traceable to any DOC action. Rather, it argues, Easterling's injury is traceable to the development and administration of the physical fitness test – for which the DAS, and not the DOC, was responsible – and therefore Easterling has no standing to sue the DOC. The court disagrees.

Easterling applied for an open position at the DOC. To fill its vacancies, the DOC, as required by Connecticut law, hired from a list of qualified candidates prepared for it by the DAS. The fact that another state agency assisted the DOC with the hiring process, however, does not absolve the DOC of its responsibility, as an employer, to comply with anti-discrimination laws.[4] See, e.g., Powers v. Alabama Dep't of Education, 854 F.2d 1285, 1294-1295 (11th Cir. 1988) (holding that, "an employer cannot delegate

---

[4] In fact, Dan Callahan, the DOC's Director of Human Resources, acknowledges this responsibility when he states that he is "responsible for ensuring that the hiring practices at DOC are in accordance with State law." Callahan Affidavit at ¶ 3.

7

several aspects of its promotion procedure to another [state] agency . . . and then escape liability if that agency develops discriminatory practices"), cert. denied, 490 U.S. 1107 (1989); James v. Stockham Valves & Fittings Co., 559 F.2d 310, 319, 339-40 (5th Cir. 1977) (employer could be liable for discriminatory tests developed by consultant), cert. denied, 434 U.S. 1074 (1978); Scott v. City of Topeka Police & Fire Civil Serv. Comm., 739 F. Supp. 1434, 1438 (D. Kan. 1990) (noting that, "[m]unicipalities have been held liable under Title VII for the discriminatory practices of commissions or committees to which employment decisions have been delegated by the municipality").

In Powers, 854 F. 2d at 1285, the Eleventh Circuit considered a suit against the State of Alabama Department of Education's Disability Determination Service ("DDS") for discriminatory promotion practices. The facts of Powers are comparable to the instant case:

> When a vacancy or a need for additional positions arose, the Director of DDS . . . would contact the Personnel Board of the State of Alabama ("SPD"), tell SPD he wanted to fill a position, and SPD would distribute the announcement. Applications were sent directly to SPD . . . . After receiving applications, SPD would develop a "register" . . . . The register listed everyone who had applied and was eligible in order of what SPD determined their qualifications to be.

Id. at 1289. DDS argued that it was not the proper defendant for a Title VII action based on discriminatory development of the registers, because those practices were the exclusive domain of the Personnel Board, a distinct state agency. The Powers court rejected this argument, holding that:

> Title VII's remedial purpose requires that an employer be held accountable for practices it, in effect, adopts if those practices have a class-wide discriminatory impact. To hold otherwise would run contrary to cases holding employers responsible for the use of discriminatory tests developed and administered by an outside agency.

Id. at 1294-1295. The court finds the reasoning of the Powers court logical and persuasive.[5] Easterling's alleged injury is traceable to the DOC's adoption of allegedly discriminatory practices by the DAS, and therefore Easterling satisfies the second element of the standing inquiry.

As for the third element, the DOC argues that "any court decision against [the DOC] would not redress the plaintiff's concerns about discrimination in the physical fitness test developed by the DAS." Defendant's Memo. in Supp. at 6. Again, the court does not agree.

Easterling's alleged injury was caused by the DOC's reliance on a candidate list that was the product of an allegedly discriminatory physical fitness examination. If the court finds that the DOC violated Title VII by relying on that list, the court might redress Easterling's injury by granting any number of the remedies she seeks, including, inter alia, an injunction preventing the DOC from using candidate lists that are the product of unlawful policies, practices, customs, or usages.

The fact that the DOC is required by Connecticut law to rely on practices developed by the DAS does not change this analysis. As previously noted, see footnote 5, supra, the DOC has the ability to affect the exam creation process. In fact, Connecticut law requires that the DAS work with the DOC in developing hiring tests.

---

[5]The DOC attempts to distinguish Powers on the grounds that, in Powers, the DDS chose to delegate certain human resources duties to the SPD, while in the instant case the DOC was required by state law to utilize the procedures developed by the DAS. This argument fails, however, because the evidence indicates that the DOC was able to affect DAS policy. For example, the DOC concedes that it provided input to the DAS during the examination creation process, see Callahan Affidavit at ¶ 4; the DOC had an employee specifically responsible for ensuring that DOC hiring practices were in accordance with State law, see id. at ¶ 3; and during the course of settlement negotiations, the DOC represented to Easterling that it had the ability to cause modifications to be made to the DOC/DAS hiring process, see e-mail from Margaret Chapple to Gary Phelan, Exhibit B to Plaintiff's Motion to Amend/Correct [Doc. No. 33] (the "Chapple e-mail").

See Conn. Gen. Stat. § 5-219 ("Examinations shall be formulated [by the DAS] in cooperation with agencies appointing specific classes of employees . . ."). Consequently, any judgment against the DOC is likely to redress Easterling's alleged injury. Easterling has satisfied the third and final element of the standing inquiry.

Easterling has standing to maintain the present action, and the court does not lack subject matter jurisdiction over the suit. Accordingly, the defendant's Motion to Dismiss for lack of standing pursuant to Rule 12(b)(1) is denied.

B.   DOC's Rule 12(b)(7) Motion

The DOC next argues that Easterling's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join an indispensable party. Specifically, the DOC claims that because the DAS created and administered the allegedly discriminatory physical fitness test at the heart of this action, the DAS is an indispensable party to the suit.

Rule 19(a) of the Federal Rules of Civil Procedure "defines those parties who are 'necessary' to an action." Jonesfilm v. Lion Gate Int'l, 299 F.3d 134, 139 (2d Cir. 2002). It provides in relevant part:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). If a party who is "necessary" under Rule 19(a) cannot be joined, "the district court must determine whether the claim should be dismissed

10

because the necessary party is 'indispensable.'" Jonesfilm, 299 F.3d at 139. In such a case, Rule 19(b) provides several factors to be considered by the court:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). However, "[a] party cannot be indispensable unless it is a 'necessary party' under Rule 19(a)." Jonesfilm, 299 F.3d at 139. Thus, the court's first inquiry is whether the DAS is a "necessary party" to this action.

As noted above, there are two standards for determining whether a party is "necessary" under Rule 19(a). Under the first standard, a party is "necessary" where "complete relief cannot be accorded among those already parties." See Fed. R. Civ. P. 19(a)(1). The court finds that the DAS is not a necessary party under the first standard.

According to the Second Circuit, "Rule 19(a)(1) is concerned only with those who are already parties." Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 385 (2d Cir. 2006). If complete relief for the existing parties can be granted in the absence of a third party, that party is not "necessary" under Fed. R. Civ. P. 19(a)(1)(A).

In this case, the presence of the DAS is not necessary to decide whether the DOC violated Title VII, nor is it necessary to grant Easterling relief if she prevails on her claim. As previously discussed, Connecticut law requires that the DAS cooperate with the DOC in formulating hiring examinations. See Conn. Gen. Stat. § 5-219. Further, the DOC acknowledges that it provides the DAS with input for the purpose of assisting

in the creation of hiring examinations.  See Callahan Affidavit at ¶ 4.  In fact, counsel for the DOC represented to Easterling that it had the ability to effect several substantial modifications to the selection process for the CO position.  See Chapple e-mail.  Given these circumstances, upon a finding that Easterling is entitled to relief, any remedies the court uses to enjoin the DOC from engaging in unlawful employment practices will have the practical effect of generating change in the policies and practices of the DAS as well.  Further, as a similarly situated agency of the State of Connecticut, for the purposes of this action, the DOC and the DAS would be equally capable of fulfilling any obligations for money damages arising out of this suit.  Therefore, it is the opinion of this court that, should Easterling prevail on her claim, complete relief could be accorded among the existing parties.  Therefore, the DAS is not a "necessary" party under Fed. R. Civ. P. 19(a)(1)(A).

As for the second standard of Rule 19(a), the DOC does not argue in its briefs that the DAS "claims an interest relating to the subject of the action and is so situated that disposing of the action in the [DAS's] absence may: (i) as a practical matter impair or impede the [DAS's] ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1)(B).  Even had the DOC so asserted, however, this argument would fail, if only because the DAS itself has not claimed an interest relating to the subject of this action.

A party's attempt to assert, on behalf of an absent non-party, concern about the dilution of the absent party's interest "falls outside the language of [Rule 19(a)]."  Peregrine Myanmar v. Segal, 89 F.3d 41, 49 (2d Cir. 1996).  "It is the absent party that

must claim an interest." Id. (internal quotation omitted) (citing Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1043 (9th Cir. 1983) (holding that, satisfying the second prong of Rule 19(a) is "contingent [ ] upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action"), cert. denied, 464 U.S. 849 (1983)).

On the record before the court, the DAS has never "asserted a formal interest in either the subject matter of this action or the action itself." Northrop Corp., 705 F.2d at 1043-1044. On the contrary, the record reflects that the DAS was content with observing the dispute as a non-party. See Phelan Affidavit at ¶ 7 ("I attended a mediation and fact-finding for this case at the CHRO . . . representatives from the Department of Administrative Services were present. These individuals included Dr. Pamela Libby and Dr. Martin Anderson"); Marnin Affidavit at ¶ 6 ("I participated in a settlement conference in this matter on June 19, 2007 . . . Dr. Pamela Libby from the Department of Administrative Services was present").

What is more, the record shows that in the Chapple e-mail, the DOC represented that, should the parties agree to the proposed settlement, "DOC/DAS will jointly administer the physical fitness test . . . ." Chapple e-mail at ¶ 4. While it is possible that the DOC made such representations without the knowledge or consent of the DAS, the court finds it much more likely – based on the DAS presence at prior and subsequent proceedings, as well as the fact that both the DOS and the DAS are agencies of the State of Connecticut and share the same counsel, i.e., the Attorney General of Connecticut – that the DAS had consulted with the DOC during the course of the dispute, at least for the purpose of developing a settlement proposal. Such

13

voluntary participation in the matter as a non-party, coupled with the failure to intervene at any time during the 45 months for which this dispute has been ongoing, indicates to the court that the DAS does not find it necessary to "claim an interest" in this matter. As a result, the standard set out under Fed. R. Civ. P. 19(a)(1)(B) has not been met, and the DAS is not a "necessary" party under Fed. R. Civ. P. Rule 19(a).

In light of the court's ruling that the DAS is not a "necessary" party, the court need not address whether the DAS is an "indispensable" party under Rule 19(b). <u>See</u> <u>Viacom Int'l, Inc. V. Kearney</u>, 212 F.3d 721, 724 (2d Cir. 2000) ("If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)"). Consequently, because Fed. R. Civ. P. 19 does not require that the DAS be joined in this action, the DOC's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(7) is denied.

    C.    <u>Easterling's Motion to Amend/Correct</u>

On September 29, 2008, Easterling moved to amend her Complaint to add the DAS as a party and to relate her claim against the DAS back to her original Complaint, which was filed on May 30, 2008. The DOC opposes Easterling's Motion for a number of reasons, including, <u>inter alia</u>, that Easterling's claims against the DAS do not meet the requirements for "relating back" set out in Fed. R. Civ. P. 15(c), and therefore those claims are untimely under Title VII. The court agrees.

Amended and supplemental pleadings are governed by Fed. R. Civ. P. 15. Rule 15(a)(1) provides that, "[a] party may amend its pleading once as a matter of course: (A) before being served with a responsive pleading . . . ." Fed. R. Civ. P. 15(a)(1). The DOC argues that, "because the defendant filed its Motion to Dismiss prior to the plaintiff

14

filing her Motion to Amend her Complaint, the provision of Rule 15(a)(1) does not apply." See Defendant's Opposition to Plaintiff's Motion to Amend at 1-2. This argument is without merit. The Second Circuit has repeatedly held that a motion to dismiss is not a "responsive pleading" for the purposes of Rule 15(a). See, e.g., Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 242-243 (2d Cir. 2007) (holding that, "[d]efendants' motion to dismiss, because it was a motion, not a pleading, was not a 'responsive pleading' within the meaning of Rule 15(a)"). Thus, because the DOC has yet to file a responsive pleading in this matter, Easterling is entitled to amend her Complaint as a matter of course.

That said, however, in order for Easterling's claims against the DAS to be timely under Title VII, they must relate back to her original Complaint.[6] Under Rule 15(c), an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading; or (C) <u>the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.</u>

Fed. R. Civ. P. 15(c) (emphasis added). Thus, in order for Easterling's claim against the DAS to relate back to her original Complaint, she must show the following: 1) the

---

[6] A Title VII claimant must file her complaint not more than 90 days after receipt of a right-to-sue letter from the EEOC. See, e.g., Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994) (citing 42 U.S.C. § 2000e-5(f)(1)). Easterling acknowledges that a Notice of Right to Sue was issued in this case on March 4, 2008. Thus, any of Easterling's claims not filed within 90 days of March 4, 2008 are time-barred, unless those claims relate back to her original Complaint, which was timely filed on March 30, 2008.

claim against the DAS arose out of the conduct, transaction or occurrence set out – or attempted to be set out – in the original pleading; 2) within 120 days[7] of the original Complaint, the DAS (i) received such notice of the action that it would not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The first requirement is clearly satisfied. The claim against DAS is essentially the same as the claim against the DOC, and thus arose out of the conduct, transaction, or occurrence set out in the original Complaint. As for the second requirement, it is the court's opinion that Easterling has failed to show that the DAS knew or should have known that this action would have been brought against it but for a mistake of identity.[8]

"The requirement that a new defendant 'knew' [it] was not named due to a mistake concerning identity presupposes that in fact the reason for [its] not being named was a mistake in identity." Cornwell v. Robinson, 23 F.3d 694, 705 (2d Cir. 1994). Easterling alleges no such mistake. In fact, Easterling admits that she was "aware of the DAS [during the administrative proceedings] and indeed identified the DAS in the CHRO charge . . . ." Memo. in Supp. of Motion to Amend at 9. Further, Easterling's counsel were aware that representatives of the DAS had participated in the CHRO proceedings, including attending the fact-finding, mediation, and settlement conference. See Phelan Affidavit at ¶ 7; Marnin Affidavit at ¶ 6.

---

[7] The period provided by Rule 4(m) is 120 days. See Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time").

[8] Because Easterling has failed to satisfy Fed. R. Civ. P. 15(c)(1)(C)(ii), the court need not address 15(c)(1)(C)(i).

Easterling argues that her "'mistake' was made in reliance on the DOC's affirmative representations that it is the employer and that, as the employer, it had the authority to modify the exam and/or direct the DAS to administer and modify the exam." Memo. in Supp. of Motion to Amend at 9-10.  Even assuming this argument is true, however, Easterling's failure to sue the DAS cannot be considered a mistake for the purposes of Rule 15(c).

In Soto v. Brooklyn Correctional Facility, 80 F.3d 34 (2d Cir. 1996), which Easterling cites, the Second Circuit reviewed its prior opinions dealing with this issue.  It noted that in Cornwell, 23 F.3d 694, it found no mistake because "the plaintiff had shown neither factual mistake (i.e., that she misapprehended the identities of the individuals she wished to sue) nor legal mistake (i.e., that she misunderstood the legal requirements of her cause of action)." Soto, 80 F.3d at 36.  Rather, "Cornwell had always known the identities of the individuals, and her original complaint had been legally sufficient," and therefore she could not satisfy the "mistake" requirement of Rule 15(c).  Id.

Easterling's case is comparable to Cornwell's.  Easterling and her counsel clearly knew of the existence and identity of the DAS, and more importantly, knew of the DAS's role in the circumstances that led to this action.  On January 2, 2008, Easterling filed a Motion for Leave to Amend Complaint[9] with the CHRO in which she stated that:

> The DAS has had notice of [the CHRO] complaint.  The DAS has actively participated in defending the [CHRO] complaint, including attending the

---

[9]This Motion was denied by the CHRO on January 18, 2008 because, inter alia, "allowing [Easterling's] 'eleventh hour' amendment would halt [the] proceeding and require service of the amended complaint upon DAS, followed by all appropriate proceedings leading up to and including a 'reasonable cause' determination."  Att. E to DOC's Memo. in Opp. to Motion to Amend at 2.

17

> Settlement Conference and preparing or assisting in the preparation of responses to [Easterling's] Requests for Production. The DAS established and administers the physical fitness test ("P.F.T.") being challenged in this complaint.

Att. C to DOC's Memo. in Opp. to Motion to Amend at 2. Given that Easterling had this information at least three months before she filed her Complaint with this court, and that she was not required to sue the DAS, her failure to name the DAS in the original Complaint "must be considered a matter of choice, not mistake." Soto, 80 F.3d at 37 (internal quotation omitted). Consequently, Easterling has not satisfied the requirements of Rule 15(c), and her claim against the DAS cannot relate back to her original Complaint.

As a result, even were the court to allow Easterling to Amend her Complaint to include a claim against the DAS, such claim would be time-barred under Title VII because it was not filed within 90 days of the issuance of the right-to-sue letter. See 42 U.S.C. § 2000e-5(f)(1). Therefore, in order to avoid the unnecessary expense and effort that would be caused by allowing Easterling to amend her Complaint with a procedurally-barred claim, the court instead denies Easterling's Motion to Amend/Correct.

## V.    CONCLUSION

For the reasons stated herein, both the DOC's Motion to Dismiss [Doc. No. 20] and Easterling's Motion to Amend/Correct [Doc No. 33] are **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 9th day of February, 2009.

                                        /s/ Janet C. Hall
                                        Janet C. Hall
                                        United States District Judge