**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHERIE EASTERLING, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
|     v. | : | 3:08-cv-0826 (JCH) |
| | : | |
| STATE OF CONNECTICUT, | : | |
| DEPARTMENT OF CORRECTION, | : | |
|     Defendant, | : | JANUARY 4, 2010 |

**RULING RE: PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Doc. No. 57)**

**I.      INTRODUCTION**

In 2004, the plaintiff, Cherie Easterling, applied to work as a Correction Officer

("CO") with the defendant, State of Connecticut Department of Correction (the "DOC").

Easterling brings this action on behalf of herself and a class of similarly situated

applicants against the DOC, asserting that the DOC violated Title VII of the Civil Rights

Act of 1964, 42 U.S.C. §§ 2000(e), et seq. ("Title VII"), by using an employment practice

– a discriminatory physical fitness test – that caused a disparate impact on the basis of

sex, and that was neither job-related nor consistent with business necessity.

Plaintiffs now move the court to certify a class action under Federal Rule of

Procedure 23(b)(2).  See Pl.'s Mot. for Class Certification ("Mot. for Class Cert.") (Doc.

No. 57).  For the reasons that follow, the court grants the Motion.

**II.      BACKGROUND**

    A.      Summary of Facts

The State of Connecticut Department of Correction operates eighteen

correctional facilities throughout Connecticut.  Facilities Page, Exh. 5 to Mot. for Class

Cert.  In order to obtain a Correction Officer position within one of these DOC facilities,

a candidate must possess a high school diploma or G.E.D., be at least twenty-one years of age, be in good health, have a good educational or work record, and be free from felony convictions.  Correction Officer Exam Announcement, Exh. 3 to Mot. for Class Cert.  Applicants who meet these criteria first take a written examination.  Libby Dep., Exh. 8 to Mot. for Class Cert. at 9.  If an applicant passes the written exam, they would then take a physical fitness test ("PFT").  Id.  Only if an applicant passes both the written and physical examinations is their application turned over to the DOC for interviews, background checks, and medical examinations.  Id. at 10.  Once an applicant has passed through each of these steps successfully, it is "more than likely" that the applicant will be hired by the DOC.  Callahan Dep., Exh. 9 to Mot. for Class Cert. at 37.

The physical fitness test consists of four parts, and failing any one part causes a candidate to fail the entire test.  See Libby Dep. at 14.[1]  Prior to 2007, the physical fitness test included: (1) a sit and reach test; (2) a one-minute sit-up test; (3) a one-minute push-up test; and (4) a timed 1.5-mile run.  See id.  The minimum standards for candidates were arranged by gender and age.  See State of Connecticut Physical Fitness Score Sheet ("PFT Score Sheet") Exh. 1 to Mot. for Class Cert.  For example, a female candidate in the 21-29 age group was required to complete the 1.5-mile run in

---

[1]  The physical fitness test was developed by the Department of Administrative Services (DAS) with input from the DOC. Under Connecticut law, the Commissioner of Administrative Services, or his authorized agent, is statutorily responsible for administering the selection programs that identify qualified candidates for appointment to, or promotion in, state agencies.  See Conn. Gen. Stat. § 5-200a, et seq. This includes, inter alia, the creation and administration of written and oral tests as well as tests of skill or physical ability.  See Conn. Gen. Stat. § 5-219.  Easterling does not dispute that the DAS, with input from the DOC, developed and administered the physical fitness test at issue in this suit.  In an earlier Ruling, this court held that Easterling's failure to join the DAS as a party did not warrant dismissal pursuant to Federal Rule of Civil Procedure 12(b)(7).  See Ruling Re: Mot. to Dismiss (Doc. No. 50).

14 minutes, 49 seconds; a female candidate in the 50+ age group was required to complete the 1.5-mile run in 17 minutes, 14 seconds.  See id.  The corresponding standards for male candidates were 12 minutes, 25 seconds for the 21-29 age group, and 14 minutes, 50 seconds for the 50+ age group.  See id.  These standards are based upon the Cooper Institute's age and gender norms for fitness, and represent the 40th percentile of performance according to age and gender.  See Anderson Dep., Exh. 17 to Mot. for Class Cert. at 14.  The Cooper Institute has stated that using its "percentile rankings. . . for standards is not defensible" because the standards "do not predict the ability to do the job and do not demonstrate criterion validity."  Cooper Institute Document, Exh. 18 to Mot. for Class Cert.

The 1.5-mile timed run was administered as part of the PFT in October 2004, June 2006, and October 2006.  See Mot. for Class Cert. at 4.  For each of these tests, the DOC used the Cooper Institute 40th percentile marks as minimum standards.  See Information Pamphlets Regarding DOC Test, Exhs. 14-16 to Mot. for Class Cert.  On each of these three occasions that the 1.5-mile test was administered, women failed the test at a higher percentage than men, although there is a dispute as to the specific passage rates.  Easterling claims that in 2004, 62% of female applicants passed the run component, whereas 82% of male applicants passed.  See 2004 Test Data, Exh. 10 to Mot. for Class Cert.  However, the DOC asserts that in 2004, 87% of male applicants passed, whereas 71% of female applicants passed.  See Libby Decl., Exh 1 to Opposition to Mot. for Class Cert. ("Opposition") (Doc. No. 61) at ¶ 15.  For the June 2006 test, Easterling contends that 59% of the female applicants passed, while 84% of men passed.  See June 2006 Test Data, Exh. 11 to Mot. for Class Cert.  With respect

-3-

to the October 2006 exam, Easterling asserts that 46% of women who performed the run component passed whereas 77% of men passed.  <u>See</u> October 2006 Test Data, Exh. 12 to Mot. for Class Cert.  The DOC contends that, for the entire 2006 period, 73% of women passed, while 91% of men passed.  <u>See</u> Libby Decl. at ¶ 16.  Easterling also offers the report of a statistical expert, Dr. Alex Vekker, who asserts that there "is a big statistically significant gender disparity in test outcomes."  Vekker Report, Exh. 23 to Mot. for Class Cert. at 3.  Specifically, he opines that the gender disparity for the October 2004, June 2006, and October 2006 tests is 5.8, 6.8, and 2.7 standard deviations, respectively.  <u>Id.</u> at 4.  There appears to be no dispute that the physical fitness test has not been shown to be predictive of who can and cannot perform the essential or critical physical functions of the job of CO.

In 2004, Cherie Easterling, a resident of Bloomfield, Connecticut, applied for employment as a Correction Officer with the DOC.  <u>See id.</u> ¶ 27.  She took and passed the written exam.  <u>See</u> PFT Score Sheet.  In October 2004, Easterling took the physical fitness test.  <u>See</u> Physical Fitness Confirmation Sheet, Exh. 2 to Mot. for Class Cert. Although Easterling passed the "sit and reach test," the "one-minute sit-up test," and the "one-minute push-up test," she failed the 1.5-mile run portion of the test.  <u>See</u> PFT Score Sheet.  As a result of failing the 1.5-mile run test, Easterling was precluded from advancing in the DOC selection process.

In 2007, the DOC modified the physical fitness component of its selection process.  <u>See</u> Libby Dep. at 22.  Instead of a timed 1.5-mile run, the DOC is now piloting a 300-meter run test.  <u>See id.</u> at 22, 37.  No concerns have been raised about the potential for the 300-meter test to have a disparate impact on female applicants.

See Callahan Dep. at 49.

    B.    Procedural History

On April 22, 2005, Easterling, on behalf of herself and similarly situated individuals, filed administrative charges of discrimination on the basis of sex with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and with the Equal Employment Opportunity Commission ("EEOC"), against the DOC.  See Cmplt. at ¶ 8.  On February 1, 2008, the CHRO issued a Release of Jurisdiction.  See id. at ¶ 9.  On February 4, 2008, the EEOC forwarded Easterling's request for a Notice of Right to Sue to the United States Department of Justice (the "DOJ").  See id. at ¶ 10.  On March 4, 2008, the DOJ Civil Rights Division issued a Notice of Right to Sue.  See id. Easterling initiated the present action in the District of Connecticut on May 30, 2008, naming the DOC as the sole defendant.  Easterling now moves the court to certify a class action pursuant to Federal Rule of Civil Procedure 23(b)(2).

## III.    STANDARD OF REVIEW

Plaintiffs bear the burden of showing that the class they have proposed meets the requirements for class certification.  See Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999); Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 484 (2d Cir. 1995).  "[T]he preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."  Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008).  A court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met.  In Re Initial Pub. Offerings Secs. Litig., 471 F.3d 24, 41 (2d Cir. 2006) [hereinafter "In Re IPO"].

The Second Circuit has defined the standard that district courts are to use in deciding whether a plaintiff has met its burden under Rule 23.  In Re IPO, 471 F.3d at 41.  A "district court may not grant class certification without making a determination that all of the Rule 23 requirements are met." Id. at 40.  These determinations "can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met." Id. at 41.  "The obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." Id.

## IV.   DISCUSSION

Easterling seeks to certify as a Class:

> All female applicants for the position of Correction Officer ("CO")
> at the State of Connecticut Department of Correction ("DOC") who
> participated in the CO selection process and failed the 1.5 mile
> run portion of the physical fitness test at any time from June 28,
> 2004 and continuing to the date of final judgment in this matter.

Mot. for Class Cert. at 9.  To maintain this class action, Easterling must establish the four prerequisites of every class action found in Federal Rule of Civil Procedure 23(a) and satisfy at least one of the prerequisites found in Rule 23(b). See Fed. R. Civ. P. 23(a) and 23(b).

### A.   Rule 23(a) Requirements

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the following prerequisites to class certification:

One or more members of a class may sue or be sued as representative parties

on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  These requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy."  See, e.g., Cruz v. Coach Stores, Inc., 202 F.3d 560 (2d. Cir. 2000).  The DOC does not challenge that Easterling has met the "numerosity" requirement.  See Opposition.  The DOC only "challenges Ms. Easterling's ability to be a representative for a class action involving the 2006 exam since she did not apply for the position of Correction Officer in 2006."  See id. at 4.  While the DOC does not specifically identify which requirement of 23(a) it believes Easterling fails to meet, this lone contention it raises suggests that it challenges the Class on the ground that Easterling is an inadequate representative of any class that consists of applicants that took the exam in 2006 as well as 2004.  Nonetheless, in addition to addressing the adequacy requirement, the court will also address commonality and typicality. Addressing each of these requirements is helpful considering that the Supreme Court has concluded that: "[t]he adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997) (internal citation, quotation marks, ellipses, and brackets omitted).

1.    Adequacy

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc., 521 U.S. at 625 (internal citation omitted).  "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. at 625-26 (internal citation and quotation marks omitted).  Rule 23(a)(4) "requires courts to ask whether plaintiff's interests are antagonistic to the interest of other members of the class."[2] In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 142 (2d Cir.2001) (internal citation and quotation marks omitted).  Disagreement as to the type of damages sought, however, does not mean representation is inadequate. See, e.g., Walsh v. Northrop Grumman Corp., 162 F.R.D. 440, 447 (E.D.N.Y.1995) (quoting Robertson v. National Basketball Ass'n, 389 F. Supp. 867, 899 (S.D.N.Y.1975) (holding that, even though different plaintiffs sought different types of damages, "all players, past and present, seek damages for the same acts").

Easterling, who herself applied for a CO position with the DOC in 2004 but failed the 1.5-mile run, seeks to represent a Class of plaintiffs who also applied for a CO position with the DOC but were eliminated from the applicant pool because they failed the 1.5-mile run.  Easterling shares the same interest as the other members of the proposed Class, namely to: (1) enjoin the DOC from returning to the 1.5-mile test as a PFT component; (2) obtain declaratory relief; (3) obtain job instatement; (4) receive

---

[2]  Rule 23(a) also requires that the lead plaintiff's attorney "be qualified, experienced, and generally able to conduct the proposed litigation." Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir.1968); see also Weber v. Goodman, 9 F.Supp.2d 163, 171 (E.D.N.Y.1998) (citing Eisen); Walsh v. Northrop Grumman Corp., 162 F.R.D. 440, 447 (E.D.N.Y.1995) (same). The defendants do not dispute that Easterling's counsel meets this standard, and the court finds that this requirement has been satisfied.

back and future pay; and (5) obtain punitive damages.  See Cmplt. at 8-9.  Moreover,

Easterling has suffered the same injury -- denial of a CO position due to the allegedly

discriminatory 1.5-mile run test -- as the other members in the proposed Class.  This is

not a case in which "differences among members of a class are such that subclasses

must be established."  In re Joint E. and S. Dist. Asbestos Litig., 982 F.2d 721, 743 (2d.

Cir. 1992).  Therefore, the court concludes that Easterling fulfills the adequacy

requirement of Rule 23(a).

2.    Commonality

The commonality requirement is met "if plaintiffs' grievances share a common

question of law or fact" with potential class members.  Marisol A. v. Giuliani, 126 F.3d

372, 376 (2d Cir. 1997).   However, "[i]t does not require that all questions of law or fact

raised be common."  Reese v. Arrow Fin. Servs., LLC, 202 F.R.D. 83, 91 (D. Conn.

2001) (internal citations omitted).  Rather, Rule 23(a)(2) requires only that common

questions exist "at the core of the cause of action alleged."  Id. at 91.  Where the

question of law involves "standardized conduct of the defendant towards members of

the proposed class. . . the commonality requirement of Rule 23(a)(2) is usually met."

Franklin v. City of Chicago, 102 F.R.D. 944, 949 (N.D. Ill.1984).

The DOC argues that, because Easterling only took the PFT in 2004, she cannot

represent a Class consisting of members that failed the PFT in 2006.  See Opposition

at 6.  However, that Easterling did not take the test in 2006 does not negate the fact

that plaintiffs' grievances share a "common question of law or fact."  The DOC

administered the identical 1.5-mile test as a component of the PFT in both 2004 and

2006.  See Mot. for Class Cert. at 4.  Moreover, the DOC utilized identical standards by

-9-

which to evaluate the performance of applicants in both 2004 and 2006.  See
Information Pamphlets Regarding DOC Test, Exhs. 14-16 to Mot. for Class Cert.
Considering that Easterling took the *identical test* and was judged against *identical
benchmarks* as those applicants that took the PFT in 2006, the court concludes that
there is sufficient commonality between the plaintiffs for the purposes of Rule 23(a).

This case closely resembles Gulino v. Bd. of Educ. of City School Dist. of City of
New York, in which a district court in this Circuit certified a class of teachers that alleged
the New York City test for teacher certification was discriminatory.  201 F.R.D. 326
(S.D.N.Y. 2001).  Although the named plaintiffs failed the certification test in 1995, the
court certified a class of all "African-American and Latino individuals employed as New
York City public school teachers by Defendants, on or after June 29, 1995, who failed
to achieve a qualifying score [on the exams]."  See id. at 330.  The fact that the named
plaintiffs may had taken the certification exams on a different date than other members
of the class did not preclude class certification.  Id.  Likewise, although Easterling took
the PFT in 2004 while a portion of the proposed Class took the PFT in 2006, class
certification is nonetheless appropriate under Rule 23(a).

3.    Typicality

"Typicality. . . requires that the claims of the class representatives be typical of
those of the class, and is satisfied when each class member's claim arises from the
same course of events, and each class member makes similar legal arguments to
prove the defendant's liability."  Walker v. Asea Brown Boveri, Inc., 214 F.R.D. 58, 63
(D. Conn. 2003) (quoting Marisol A.,126 F.3d at 376)).  "Minor conflicts, however, do
not make a plaintiff's claims atypical; it is when the conflict goes to the very subject

matter of the litigation that the conflict will defeat the claim of representative status."
Walker, 214 F.R.D. at 63-64 (quoting Walsh v. Northrop Grumman Corp., 162 F.R.D.
440, 445 (E.D.N.Y.1995)) (internal quotation marks omitted).  "Differences in the degree
of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of
a representative's claims."  Ouellette v. Int'l Paper Co., 86 F.R.D. 476, 480 (D. Vt. 1980)
(citations omitted).  Therefore, it is unnecessary to determine whether Easterling's
damages are the same as those suffered by others in the Class.  In light of the
reasoning discussed in the preceding sections, the court finds that each Class
member's claim arises from the same course of events, and that each Class member
would rely on similar legal arguments to prove the DOC's liability.

      B.    Rule 23(b) Requirements

      In order to be certified as a class action, a class must not only meet all Rule
23(a) requirements, but it must also qualify under one of the three Rule 23(b)
subdivisions.  Rule 23(b) delineates three types of class actions.  The first two
subsections of the Rule outline two types of cases in which class certification is
especially appropriate: first, in Rule 23(b)(1), where the rights of either potential class
members or the party opposing the class would be harmed by piecemeal adjudication,
and second, in (b)(2), where the class seeks injunctive or declaratory relief against a
party who has itself treated the class as a group in the context of its own acts or
admissions.  Subsection (b)(3) addresses the residual situation where class
adjudication would "achieve economies of time, effort, and expense, and promote
uniformity of decision as to persons similarly situated, without sacrificing procedural
fairness or bringing about other undesirable results," but where the circumstances of

(b)(1) or (b)(2) are not met.  Rules Advisory Comm. Notes, 39 F.R.D. 69, 102-03 (1966).

Plaintiffs seek class certification under Rule 23(b)(2).  Rule 23(b)(2) provides for class litigation where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  FED. R. CIV. P. 23(b)(2).  The relief sought need not be solely equitable in nature.  When both equitable and monetary relief are sought, the district court may still certify the class under subsection (b)(2) if it determines that certification is appropriate "in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case."  Parker v. Time Warner Cable, 331 F.3d 13, 20 (2d Cir.2003) (internal quotations omitted).  As the Second Circuit explained in Parker, when making a determination about subsection (b)(2) certification, the district court must first determine whether, "even in the absence of possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought."  Id. (quoting Robinson v. Metro-North Commuter R.R., 267 F.3d 147 (2d Cir.2001)).  Next, the court must also consider whether "the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits."  Id.

The DOC argues that the proposed Class should not be certified under Rule 23(b)(2) because the DOC has modified its physical fitness test so that applicants must no longer perform the 1.5-mile run, and instead must adequately perform a 300-meter run.  See Opposition at 3.  The DOC claims that the request for injunctive relief is moot considering that no complaints have been received about the disparate impact of the

300-meter run, see Callahan Dep. at 49, and that the Motion for Class Certification should therefore be denied because "injunctive and declaratory relief do not predominate the relief sought."  Opposition at 3-4.  Easterling contends that the replacement of the 1.5-mile test with the 300-meter test has only been made on a provisional basis, and that injunctive relief remains appropriate.  See Pl.'s Reply in Support of Class Cert. ("Reply") (Doc. No. 67) at 2.

A defendant's voluntary cessation of allegedly unlawful activities can render a claim for injunctive relief moot "only 'if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Seidemann v. Bowen, 499 F.3d 119, 128 (2d Cir. 2007) (quoting Granite State Outdoor Advert., Inc. v. Town of Orange, 303 F.3d 450, 451 (2d Cir. 2002)).  In other words, the party "claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  N.Y. Pub. Interest Research Group v. Whitman, 321 F.3d 316, 327 (2d Cir. 2003) (quoting Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 174 (2000)).

In this case, defendants have not demonstrated that there is "no reasonable expectation that the alleged violation will recur."  Seidemann, 499 F.3d at 128.  The DOC only asserts in its Opposition that "the physical fitness test has been modified by DAS," but it does not allege that the 1.5-mile test cannot be reasonably expected to recur.  Opposition at 3.  Easterling has herself offered evidence to support the conclusion that there is a reasonable likelihood that the DOC will reinstate the 1.5-mile

-13-

run component.  During her deposition, Pamela Libby, a member of the Department of

Administrative Services, made it clear that the 300-meter run has only replaced the 1.5

mile run as a "pilot program."  See Libby Dep. at 22.  Libby stated that "[w]e are piloting

the 300-meter run currently."  Id.  Furthermore, when asked if that means "that at some

later point it may be canceled," Libby responded, "That would be correct.  We have to

review the data."  Id. at 37.  This review process will consist of evaluating "success in

the academy, turnover, workers' comp. data, performance evaluations."  Id.  Finally,

when asked when the review of the 300-meter pilot program was to commence, Libby

responded, "[v]ery shortly."  Id.  This testimony suggests that the 300-meter run has

only been implemented on a provisional basis, and that there is therefore a reasonable

expectation that the DOC may return to its previous 1.5-mile run test.  Therefore, the

injunctive relief plaintiffs seek has not been rendered moot.

Moreover, during her deposition, Libby states that the DOC implemented the

new 300-meter test only in response to the current lawsuit.  See Libby Dep. at 22.

When asked why the 1.5-mile run component of the exam was replaced for the 2007

exam, Libby answered: "In response to this lawsuit, we were looking for an alternative,

and we are piloting the 300-meter run currently."[3]  Id.  Where a defendant takes steps

to remedy potentially unlawful behavior following the filing of a lawsuit, courts have

been willing to grant certification under 23(b)(2) because the fact that the defendant

changed its behavior only in the face of a lawsuit indicates that the defendant's

---

[3] Although Easterling first filed her Complaint in federal court on May 30, 2008, she first initiated
her action against the DOC on April 22, 2005.  At that time, Easterling, on behalf of herself and similarly
situated individuals, filed administrative charges of discrimination on the basis of sex against the DOC with
the CHRO and with the EEOC.  See Cmplt. at ¶ 8.  Therefore, despite the fact that the docket indicates
this action was initiated in 2008, the DOC had notice of Easterling's claims from early 2005.

commitment to its changed practice is questionable.  See, e.g. Buchanan v. Consolidated Stores Corp., 217 F.R.D. 178, 189 n.14 (D. Md. 2003) (granting 23(b)(2) certification because "the fact that the no-check policy was abolished [before the Certification Ruling] does not render injunctive relief moot" in as much as "[d]efendants' commitment to the new check acceptance policy is questionable having instituted it just several months after the filing of this lawsuit"); Mack v. Suffolk County, 191 F.R.D. 16, 21 (D. Mass. 2000) ("The Defendants bear a particularly heavy burden of establishing mootness if the challenged policy had been in place at the time the suit was filed."). Because the DOC has failed to demonstrate that the 1.5-meter test cannot be reasonably expected to recur, and because the DOC modified that policy only in response to the filing of Easterling's claims with the CHRO and EEOC, the injunctive relief plaintiffs seek is not moot, and certification under Rule 23(b)(2) is appropriate.

Easterling also contends that, even if the DOC had met its burden of demonstrating that there was no reasonable expectation that the 1.5-mile test will be reimplemented, class certification under Rule 23(b)(2) would still have been appropriate because injunctive relief would still predominate the Class claims.  Specifically, Easterling notes that, in her Complaint, she requests "[a]n order restoring Plaintiff and Class members to their rightful positions at the [DOC]," and "[b]ack pay (including interest and benefits) for Plaintiff and Class members."  Cmplt. at ¶ 41, 42.  Easterling contends that, because this relief sought is equitable in nature, certification under Rule 23(b)(2) is still appropriate even if her request for an injunction against the DOC from using the 1.5-mile test, Cmplt. at ¶ 39, has been rendered moot.

In light of the fact that the DOC has not met its burden of demonstrating that

there is no reasonable expectation that the 1.5-mile test will recur, the court need not

address this issue in great detail.  Nonetheless, the court agrees that the remaining

relief plaintiffs request is equitable in nature.  See Robinson, 267 F.3d at 157

(determining that under Title VII "back pay and front pay have historically been

recognized as equitable relief" and that "back pay could be sought in a [23](b)(2) class

action, because, as an equitable remedy similar to other forms of affirmative injunctive

relief permitted in (b)(2) class actions, it was an integral component of Title VII's 'make

whole' remedial scheme") (citing inter alia Allison v. Citgo Petroleum Corp., 151 F.3d

402, 415 (5th Cir. 1998)).  The court therefore concludes that, even if the request for

injunctive relief relating to the elimination of the 1.5-mile test were in fact moot, and

even in the absence of possible monetary recovery, "reasonable plaintiffs would bring

the suit to obtain the injunctive or declaratory relief sought."  Parker, 331 F.3d at 20.

Additionally, the "injunctive or declaratory relief sought would be both reasonably

necessary and appropriate were the plaintiffs to succeed on the merits."  Id.  Class

certification under Rule 23(b)(2) is therefore appropriate.

## V.    CONCLUSION

For the foregoing reasons, the court concludes that the Class Easterling

proposes to represent in her Motion for Class Certification satisfies the requirements of

Rule 23(a).  Furthermore, the injunctive relief pertaining to the elimination of the 1.5-

mile test has not been rendered moot by the DOC's voluntary cessation of that exam,

considering that the DOC has not demonstrated that there is no reasonable expectation

that the 1.5-mile test might recur.  Even if that relief was deemed moot, certification

under 23(b)(2) would still be appropriate considering the nature of the remaining

-16-

remedies that the Class seeks.  Therefore, the Motion for Class Certification (Doc. No. 57) is **GRANTED.**

**SO ORDERED.**

      Dated at Bridgeport, Connecticut this 4th day of January, 2010.


                                                  ___ /s/ Janet C. Hall_____
                                                  Janet C. Hall
                                                  United States District Judge