UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHERIE EASTERLING, individually and on behalf of all others similarly situated, | : : : : | CIVIL ACTION NO. 3:08-CV-826 (JCH) |
| Plaintiffs, | : : | |
| -against- | : : | JULY 26, 2103 |
| STATE OF CONNECTICUT, DEPARTMENT OF CORRECTION | : : : | |
| Defendant. | : : | |

**ORDER GRANTING**
**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND**
**APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION**
**SETTLEMENT PROCEDURE**

The above-entitled matter came before the Court on Plaintiff's Motion for Preliminary

Approval of Settlement and Approval of Plaintiffs' Proposed Notices of Settlement and Class

Action Settlement Procedure ("Motion for Preliminary Approval"). This Court granted class

certification on January 4, 2010. On May 5, 2011 the Court entered partial summary judgment

in favor of Plaintiff as to liability for disparate impact discrimination arising from Defendant's

use of the 1.5 mile portion of the physical fitness test for female Correction Officer applicants to

the State of Connecticut.

On November 22, 2011, the Court modified its earlier certification Order, certifying

Plaintiff's claims for class-wide declaratory and injunctive relief pursuant to Fed. R. Civ. P.

23(b)(2), and Plaintiff's claims for monetary and individualized injunctive relief pursuant to Fed.

R. Civ. P. 23(b)(3). ECF No. 156. The Court held that the members of the class include "[a]ll

female applicants for the position of Correction Officer ("CO") at the State of Connecticut

Department of Correction ("DOC") who participated in the CO selection process and failed only the 1.5 mile run portion of the physical fitness test at any time from June 28, 2004, and continuing to the date of final judgment in this matter." *Id.* at 51.

On January 3, 2012, following briefing, the Court approved the form of notice and opt-out form for the class, ECF No. 166. The Court then set the schedule for the remedial damages phase of litigation on January 19, 2012. ECF No. 172. Only one class member, Virginia C. Brennan, opted-out of the class. ECF No. 173.

Having considered the Motion for Preliminary Approval, the supporting declaration, and the complete record in this matter, for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

I.   **Preliminary Approval of Settlement**

1.     Based upon the Court's review of the Motion for Preliminary Approval, the Court grants preliminary approval of the settlement memorialized in the Stipulated Agreement, attached to the Dugger Declaration ("Dugger Decl.") as Exhibit B.

2.     The Court concludes that the proposed Stipulated Agreement is within the range of possible settlement approval, such that notice to the Class is appropriate. *See In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010); *Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006).

3.     Having conducted an initial evaluation of the fairness of the proposed settlement on the basis of the Motion for Preliminary Approval, the supporting declaration and its attached documents, the Court finds that there is "probable cause to submit the [settlement] to class members" and will "hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627

F.2d at 634 (internal quotations omitted).

    4.    The Court finds that the Stipulated Agreement is the result of extensive, arm's length negotiations by counsel, well-versed in the prosecution of complex employment class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

    5.    The assistance of an experienced mediator reinforces that the Stipulated Agreement is non-collusive. *See Capsolas v. Pasta Res., Inc.*, No. 10 CV 5595, 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012).

**II.    Notices to the Class**

    6.    The Court approves the proposed Court-Authorized Notices ("Notices")[****] attached to the Dugger Declaration as Exhibit C (notice for class members for whom Class Counsel already has SSA and IRS authorizations) and Exhibit D (notice for class members for whom Class Counsel does not have SSA and IRS authorizations), and directs their distribution on August 2, 2013.

    7.    The contents of the Notices comply fully with due process and Federal Rule of Civil Procedure 23.

    8.    Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), the notice must be:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

    9.    The Notices satisfy each of these requirements and adequately put Rule 23 class

[****]with the modification at page 5 of the Notice (para. 2 of Ex. C, para. 3 of Ex. D) to read: "It is important to understand that if you opt-out of the class, Class Counsel will no longer represent you, and if you wish to pursue your claims on your own behalf before they expire, you will need to retain separate counsel or represent yourself."

members on notice of the proposed settlement. *See, e.g., Menkes*, 270 F.R.D. at 105 (class notice "must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance") (citing *McReynolds v. Richards–Cantave*, 588 F.3d 790, 804 (2d Cir. 2009)).

      10.    The Notices are appropriate because they describe the terms of the settlement, inform the class about the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing. *Capsolas*, 2012 WL 1656920, at *3.

## III. Class Action Settlement Procedure

      11.    The Court hereby adopts the following general settlement approval procedures:

    a)    Class members who have submitted complete IRS and SSA authorization forms and who do not opt out will receive back pay awards.

    b)    Class members who have not submitted IRS and SSA authorization forms will receive the required forms.

    c)    If a class member submits incomplete SSA or IRS authorization(s), Class Counsel will send a letter to the class member explaining the reason that the authorization is incomplete within five days, after which the class member will have fourteen days from the mailing to submit the corrected authorization(s) to Class Counsel via facsimile (or submit by mail by the original deadline if that deadline provides more time).

    d)    Class members will be divided into two groups based on whether they first applied to the Correction Officer position in 2004 or 2006.

    e)    Using the information obtained for each class member from the IRS and SSA, Class Counsel will calculate the difference in wages for each class member as compared to the Correction Officer position (as valued in damages Tables 2 and 3 of the Stipulated Agreement) during the Damages Period. This value will represent the back pay value each class member would have been entitled to

prior to a pro rata reduction reflecting the gross class damages methodology.[1]

f)   The total difference in wages between each class member and the Correction Officer position during the Damages Periods will be separately totaled for 2004 and 2006 applicants.  Class members whose actual wages were more than the wages they would have received as a Correction Officer during their Damages Period will have a value of zero for this step.

g)   For each group (*i.e.* 2004 and 2006 applicants) the gross class damages attributed to that applicant group in damages Table 1 ($565,474 for 2004 and $1,286,418 for 2006)[2] will be divided by the total income difference for all participating class members for each respective group derived from the totals of step #6.

h)   The resulting proportional value for the 2004 applicants and 2006 applicants will be applied to the value calculated for each class member in step #5, which will determine that class member's appropriate pro rata distribution (the 2004 and 2006 applicant groups will have different proportional values).

12.   In addition, the Court hereby also adopts the following specific settlement approval procedures:

a)   Following preliminary approval, and prior to mailing notice, Class Counsel will run a search for any new addresses for each class member reported since January 1, 2012, on Westlaw People Search.

---

[1]   Where the information provided by the IRS and SSA differ for a given year, the values will be averaged.  Where only one agency provides information in response to Class Counsel's submission of complete authorization forms for a given year, Class Counsel will base its calculations on only the information provided by the disbursement deadline.  In instances where an authorization was submitted to Class Counsel, but became stale before submission to the IRS or SSA, Class Counsel will rely on the information received as of the time of disbursement of awards, but prior to such reliance, will also request an additional authorization from the class member and submit it to the relevant agency.

[2]   The 2004 and 2006 totals will each be reduced by half of any incentive payment awarded to Cherie Easterling from the gross class damages fund.  The maximum such award permitted by the Stipulated Agreement is $10,000.

b)      On August 2, 2013, Class Counsel will mail the notices to class members (class members for whom Class Counsel has not received SSA and IRS authorization forms will also receive the required forms and a pre-paid envelope for delivery to Class Counsel), at their last known address, as well as any additional addresses provided by Westlaw People Search, for the period after January 1, 2012. Class members for whom Class Counsel have received completed IRS and SSA authorization forms will receive the notice attached to the Dugger Decl. as Ex. C, and class members for whom Class Counsel has not received completed authorizations will receive the notice attached to the Dugger Decl. as Ex. D.

c)      Class members will have until September 3, 2013, to opt out of or object to the settlement ("Notice Period").

d)      A final fairness hearing will occur on September 10, 2013 at 2:00 pm.

e)      Plaintiff will file a Motion for Final Settlement Approval and Motion for Approval of Attorney's Fees and Costs and Incentive Award by September 6, 2013.

f)      After the fairness hearing, if the Court grants Plaintiff's Motion for Approval of Settlement, the Court will issue a Final Order and Judgment.  If no party objects to the proposed settlement, the "Effective Date" of the settlement will be the day the Court enters its Final Order and Judgment.

g)      If an individual or party object to and appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved in favor of final approval and the time for any further appeal, rehearing, or reconsideration has expired.

h)      Class Counsel will mail class members a copy of the Final Order and Judgment and the pension credit request form, Dugger Decl., Ex. E (Pension Credit Request Form), within seven days of the Effective Date of settlement.  Following approval of the settlement, Class Counsel will also send a short follow-up notice, to be agreed to by both parties, and ultimately approved by the Court at the fairness hearing, containing the final deadline for submitting SSA and IRS authorizations (to class members that have failed to submit them), and any other information agreed to by the parties.

i)      Defendant will disburse one check in the amount of $1,851,892 (gross back pay relief) and one check in the amount of $1,232,463 (attorney's fees and costs) to Class Counsel within thirty days of the Effective Date of settlement.

j)      Back pay award checks will be mailed to class members one hundred and fifty days after the Effective Date of the settlement. If, after Class Counsel submits the IRS and SSA authorization forms, it does not receive SSA and/or IRS information from the respective agencies (for any class member in any given year) within one hundred and thirty-five days of the Effective Date of settlement, Class Counsel will designate that year a value of $10,000 in wages with respect to the class member's wages/damages calculations.

k)      Class Counsel will deduct the amount of outstanding liens due and owing to the State of Connecticut from the disbursement made to each class member who is subject to such lien(s) and remit those funds to the State at the time the disbursement check is sent to the class member. Defendant's counsel will provide Class Counsel with a list of such outstanding liens.

l)      Funds that remain undisbursed because class members do not cash their back pay award checks within ninety days of receipt (as required under the Stipulated Agreement), will be disbursed to the class members who deposited checks within the required ninety days. This second distribution of the remaining funds will be apportioned equally, to all class members who deposited their checks within the deadline, and will be disbursed sixty days after the latest deadline for all class members to have deposited their back pay award check.

m)    The parties shall abide by all terms of the Stipulated Agreement attached as Ex. B to the Dugger Decl.

It is so ORDERED this 26th day of ____July____, 2013.

/s/ Janet C. Hall
_____
Honorable Janet C. Hall
United States District Judge